UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| PROASSURANCE SPECIALTY INSURANCE COMPANY, INC., Plaintiff, | : : : : | |
| v. | : : | C.A. No. 18-343WES |
| RICKY W. MCCULLOUGH, M.D., and BARBARA VALLETTA, Defendants. | : : : : | |

## REPORT AND RECOMMENDATION

Patricia A. Sullivan, United States Magistrate Judge.

Filed as a declaratory judgment action pursuant to 28 U.S.C. § 2201, this case is an insurance coverage dispute pitting a provider of professional services insurance to physicians, ProAssurance Specialty Insurance Company, Inc. ("ProAssurance"), against its insured, Ricky W. McCullough, M.D., and a certified nurse assistant/mental healthcare worker ("CNA") employed by Roger Williams Medical Center ("RWMC"), Barbara Valletta. The case arises out of an incident that occurred on May 21, 2012, when Dr. McCullough was treating an intoxicated patient in the emergency room, assisted by Ms. Valletta in her capacity as a CNA. When Ms. Valletta repeatedly raised her voice at, grabbed, pushed and shook the patient, Dr. McCullough believed she had "kind of crossed over the line" and restrained her by grabbing her by the arm. Ms. Valletta claimed that this action amounted to negligence, assault and battery and negligent infliction of emotional distress and sued Dr. McCullough in Rhode Island Superior Court for lost wages, medical expenses and pain and suffering, among other damages. Claiming that Ms. Valletta's Superior Court complaint alleged a "professional incident" covered by the ProAssurance policy, Dr. McCullough demanded that it defend the action. ProAssurance responded by invoking the definitions of "professional incident" and "professional services," as

well as the exclusion for "any obligation . . . for which any carrier as insurer may be held liable under any workers' compensation . . . law," among others, and took the position that it had no duty to defend or to indemnify Dr. McCullough. It nevertheless agreed to provide a defense as a courtesy under a full reservation of rights. To clarify its obligations, it initiated this declaratory judgment action properly based on diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).

ProAssurance's motion for summary judgment asks the Court to construe the plain meaning of the words used in its Health Care Professional Liability Policy (the "Policy") and to declare that it has no duty to defend or to indemnify Dr. McCullough in connection with Ms. Valletta's claim. Dr. McCullough's cross motion asks the Court to declare the opposite. Ms. Valletta asks the Court to deny ProAssurance's motion for summary judgment because she agrees with Dr. McCullough's argument that the incident is covered by the Policy; she also asserts that ProAssurance delayed in initiating this declaratory judgment action and that her rights are not limited by the exclusions in the Policy because she is not a party to it.

The cross motions of ProAssurance and Dr. McCullough have been referred to me for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). While Dr. McCullough and Ms. Valletta apparently continue to contest vigorously the facts arising from the incident, including whether his conduct gives rise to liability and whether and to what extent his conduct caused any injury, the facts that are material to this declaratory judgment action are undisputed and the matter is ripe for determination. For the reasons that follow, I find the Policy to be clear and unambiguous and recommend that the Court declare that that ProAssurance has a duty to defend and indemnify because the incident arose out of the rendering of professional services. Nevertheless, I also recommend that the Court declare that ProAssurance's duty to defend and indemnify is cabined by the unambiguous language of Exclusion G, which eliminates Policy

2

coverage for any obligations based on Ms. Valletta's expenses for reasonable and necessary medical treatment, lost wages and/or lost earning capacity, all of which are potential liabilities of the insurer that was liable to pay, and did pay, workers' compensation coverage to Ms. Valletta in connection with the incident under Rhode Island workers' compensation law. See generally R.I. Gen. Laws § 28-33-1, *et seq*.

## I. UNDISPUTED FACTS[1]

On May 21, 2012, Dr. McCullough was working as a contract physician providing medical services to patients on behalf of NES Americas, Inc., through its subsidiary, Medical Services of Rhode Island, Inc., in the emergency room at RWMC in Providence, Rhode Island. PSUF ¶¶ 1-7. He claims that, while providing emergency medical treatment to an intoxicated patient, he became involved in the incident with Ms. Valletta, an employee of RWMC who was assigned as the CNA to assist him. DSUF ¶ 21. While providing medical services to the patient, Dr. McCullough alleges that he restrained Ms. Valletta to prevent her from continuing to grab, push, shake and yell at the patient. PSUF ¶ 8; DSUF ¶¶ 21-30. Dr. McCullough testified that his conduct was based on his belief that Ms. Valletta's actions were not necessary for the safety of the patient and that she had "kind of crossed over the line." DSUF ¶¶ 25, 28. With respect to the incident, Ms. Valletta does not claim that she was, in any respect, a patient of Dr. McCullough or that she was receiving any sort of professional treatment from Dr. McCullough or that there was any physician/patient relationship between her and Dr. McCullough.

---

[1] ProAssurance relies on twenty undisputed facts. ECF No. 12 ("PSUF ¶¶ 1-20"). Dr. McCullough does not dispute any of them and has added seventeen more. ECF No. 16 ("DSUF ¶¶ 21-37"). No other party has filed a statement disputing any of ProAssurance's or Dr. McCullough's facts.

On December 17, 2013, Ms. Valletta filed a Complaint suing Dr. McCullough in the Rhode Island Superior Court. PSUF ¶ 11; PSUF Ex., ECF No. 12-1[2] ("Valletta Compl."). It alleges that Dr. McCullough committed an assault on her while she was working in the course of her employment at RWMC. Valletta Compl. ¶¶ 4, 7, 10, 11, 14, 17. The pleading has three Counts – first, negligence in breach of the duty to provide a safe and secure atmosphere; second, assault and battery in intentionally causing bodily contact; and third, negligent infliction of emotional distress by causing severe emotional distress accompanied by physical symptoms. Id. ¶¶ 4-19. The Valletta Complaint seeks damages for "severe personal injuries, great pain and suffering, . . . tremendous medical expenses, . . . loss of enjoyment of life, . . . lost wages and/or lost earning capacity, and . . . other great damage," as well as for "severe emotional distress." Id. ¶¶ 8, 12, 19.

On December 31, 2013, Dr. McCullough sought defense coverage from ProAssurance as to the Valletta Complaint. PSUF ¶ 12; PSUF Ex., ECF No. 12-12. Several weeks later, Dr. Keri Gardner of NES, on behalf of ProAssurance, advised Dr. McCullough that the Policy does not provide defense or indemnity coverage as to the Valletta Complaint, as the Policy does not provide coverage for claims of injury to non-patients; nevertheless ProAssurance agreed that it would provide a courtesy defense to Dr. McCullough under a full reservation of its rights. PSUF ¶¶ 5, 13; PSUF Ex., ECF No. 12-13. Since that time, ProAssurance has provided a defense to Dr. McCullough in connection with the Valletta Complaint, at all times under a full reservation of rights. PSUF ¶¶ 15, 16, 18. The Valletta Complaint remains pending.

---

[2] Because the attachments to Plaintiff's Statement of Undisputed Facts do not have exhibit numbers, this report and recommendation uses the applicable ECF numbers.

In addition to the claims that she asserted in the Valletta Complaint, Ms. Valletta also claimed and recovered workers' compensation benefits. Id. ¶ 20. These benefits were provided to her as the obligation of the workers' compensation insurer for her employer, RWMC. Id.

## II. APPLICABLE POLICY TERMS

ProAssurance relies on two discrete arguments. First, it contends that the incident is not covered by the Policy because Ms. Valletta was not Dr. McCullough's patient and her claim against him is not a professional incident because it did not involve the delivery of professional services or involve a breach of the physician/patient relationship. Second, even if the incident is covered by the Policy, ProAssurance asserts the exclusion barring it from any duty to defend or indemnify in connection with obligations for which a workers' compensation insurer may be liable for coverage.

The Policy terms applicable to these arguments are below.

### A. Definitions

The Policy contains the following pertinent definitions:

**Damages** means all amounts of money which are reimbursable under this policy because of injury . . .

**Defense Costs** means reasonable and necessary costs incurred by or on behalf of an insured . . .

**Policy** means the **Cover Page**, the forms listed thereon and any endorsements issued from time to time. The policy terms in effect at the time a professional incident is first reported shall apply to that professional incident.

**Professional incident** means:

> A. a single act or omission, or a series of related acts or omissions during a continuing course of **professional services**, arising out of the rendering of, or failure to render, **professional services** to any one person by an **insured** or any person for whose acts or omissions an **insured** is legally responsible, which results, or is likely to result, in **damages** . . .

> **Professional services** means the provision of direct patient care, including treatment, diagnosis and consultation that an insured may legally perform and that is within the scope of the insured's profession.

PSUF Ex., ECF No. 12-3 at 4-5 (emphasis in original) ("Policy").

### B. Insuring Agreement

The Insuring Agreement provides:

**PROFESSIONAL LIABILITY COVERAGE PART**

**I. INSURING AGREEMENT**

> During the policy period only, we will reimburse the policyholder those sums that an insured becomes fully and finally legally obligated to pay as damages and defense costs because of any professional incident which occurs after the retroactive date and which are actually paid by the policyholder during the policy period.

Id. at 5 (some emphasis omitted).

### C. Exclusions

While ProAssurance has asserted several exclusions that might be applicable if coverage were afforded in the first instance,[3] its motion for summary judgment asks the Court to declare the meaning only of Exclusion G:

**EXCLUSIONS**

> We will not reimburse for any damages because of any of the following, and we will not provide a defense for any suit alleging any of the following: . . .

---

[3] The asserted exclusions that are not in issue now are the following:

> D. Liability arising out of any (1) willful, wanton, fraudulent (whether intentional or unintentional), dishonest, criminal, reckless, malicious or oppressive act or omission; or (2) conduct which is outrageous, demonstrates conscious indifference to consequences, or evidences intentional, reckless or careless disregard for the rights of others; . . .
>
> L. Liability arising out of the acts of any insured which are outside the scope of the insured's profession or duties.

Id. at 6-7 (emphasis omitted).

G. Any obligation for which an insured or any carrier as insurer may be held liable under any workers' compensation, unemployment compensation, disability benefits, or any similar law.

Id. at 6 (emphasis omitted).

### III. STANDARD OF REVIEW

In an insurance coverage dispute, summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Mount Vernon Fire Ins. Co. v. Stagebands, Inc., 636 F. Supp. 2d 143, 146 (D.R.I. 2009); see Vermont Mut. Ins. Co. v. Ciccone, 900 F. Supp. 2d 249, 256 (D. Conn. 2012) ("summary judgment is an appropriate vehicle by which to determine whether an insurer owes an insured a duty to defend on the basis of an insurance policy"). A dispute of fact is genuine if it "may reasonably be resolved in favor of either party." Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008). A material fact "has the capacity to sway the outcome of the litigation under the applicable law." Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995). On cross motions for summary judgment, the Court considers each movant separately. O'Donnell v. Twin City Fire Ins. Co., 40 F. Supp. 2d 68, 71 (D.R.I. 1999); see Barnes v. Fleet Nat'l Bank, N.A., 370 F.3d 164, 170 (1st Cir. 2004) (court determines whether either party deserves judgment based on undisputed facts).

### IV. APPLICABLE INSURANCE LAW AND ANALYSIS[4]

---

[4] As to the governing law, the Policy provides as follows:

**XIII. GOVERNING LAW**

> This policy shall be construed, and the legal relations between us and the insureds (and anyone claiming under the insureds) shall be determined in accordance with the laws of the state in which the address of the policyholder, as specified in the Coverage Summary, is located . . .

Policy at 9. The Policy "Coverage Summary" lists the "policyholder" as "NES Americas, Inc., its affiliates and subsidiary companies" and the relevant address as "6466 College Park Square, Suite 316 Virginia Beach, VA." Id.

7

Insurance contracts are construed in accordance with the general rules applicable to contracts. TravCo Ins. Co. v. Ward, 736 S.E.2d 321, 325 (Va. 2012); Colagiovanni v. Metro. Life Ins. Co., 190 A. 459, 460 (R.I. 1937). Words used in insurance policies are to be given their usual, ordinary and popular meaning. TravCo, 736 S.E.2d at 325; Bush v. Nationwide Mut. Ins. Co., 448 A.2d 782, 784 (R.I. 1982). When policy terms are clear and unambiguous, they must be applied as written. Bush, 448 A.2d at 784. Conversely, when language is susceptible of one or more reasonable interpretations, it is considered ambiguous and construed strictly against the insurer. Goucher v. John Hancock Mut. Life Ins. Co., 324 A.2d 657, 662 (R.I. 1974). "No word or clause in the contract will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words needlessly." TravCo, 736 S.E.2d at 325; City of Chesapeake v. States Self-Insurers Risk Retention Grp., Inc., 628 S.E.2d 539, 541-42 (Va. 2006). Phrases and clauses in the insurance contract should be considered and construed together to effectuate the intention of the parties. TravCo, 736 S.E.2d at 325; Floyd v. Northern Neck Ins. Co., 427 S.E.2d 193, 196 (Va. 1993).

The language of insurance policy exclusion clauses is interpreted using the same principles. They must also be clear and unambiguous and are to be strictly interpreted. Jackson v. Quincy Mut. Fire Ins. Co., 159 A.3d 610, 613-14 (R.I. 2017); Am. Commerce Ins. Co. v. Porto, 811 A.2d 1185, 1192 (R.I. 2002). The court must look not at what the insurer may have intended the policy to cover or exclude, but rather what an ordinary reader of the policy would have understood the policy's terms to mean if he or she had read them. Porto, 811 A.2d at 1192.

---

at 3. ProAssurance contends that this language requires the Court to apply the law of the Commonwealth of Virginia, but also represents that the law of Rhode Island is sufficiently similar to that of Virginia in all material respects that the Court may interchangeably rely on the law of both, or either, states. Dr. McCullough and Ms. Valletta do not disagree, but they urge the Court to rely on the law of Rhode Island. Based on the parties' concurrence, I rely principally on the decisional law of Rhode Island and occasionally that of Virginia, with citation to cases from other jurisdictions that are not controlling but persuasive.

Doubts about the potential for coverage must be resolved in favor of the insured.  Mount Vernon Fire Ins. Co., 636 F. Supp. 2d at 147-48; Mallane v. Holyoke Mut. Ins. Co., 658 A.2d 18, 20 (R.I. 1995).  The court should "not engage in mental or verbal gymnastics to hurdle over the plain meaning of the policy's language."  Porto, 811 A.2d at 1193.

Denominated the "Eight Corners Rule," Virginia law provides that the duty of an insurer to defend arises whenever the underlying complaint "alleges facts and circumstances, some of which would, if proved, fall within the risk covered by the policy."  Morrow Corp. v. Harleysville Mut. Ins. Co., 101 F. Supp. 2d 422, 426 (E.D. Va. 2000); see Copp v. Nationwide Mut. Ins. Co., 692 S.E.2d 220, 224 (Va. 2010).  The reverse is also true – that is, an insurer is not obligated to defend its insured if "under the allegations of the complaint, it would not be liable under its contract for any recovery."  Morrow Corp., 101 F. Supp. 2d at 426.  Similarly, under Rhode Island law, but referred to as the "pleadings test," the insurer's duty to defend is determined by comparing the allegations in the underlying complaint to the risks covered in the policy.  Hingham Mut. Fire Ins. Co. v. Heroux, 549 A.2d 265, 266 (R.I. 1988).  The duty to defend is broader than the duty to indemnify.  Mellow v. Med. Malpractice Joint Underwriting Ass'n of R.I., 567 A.2d 367, 368 (R.I. 1989).  If there is no duty to defend the complaint, there also can be no duty to indemnify.  Mount Vernon Fire Ins. Co., 636 F. Supp. 2d at 147; Town Crier, Inc. v. Hume, 721 F. Supp. 99, 101 (E.D. Va. 1989).

### A. Coverage for "Professional Incident"

ProAssurance argues that the Policy does not provide coverage for the incident because the Valletta Complaint does not state a claim by a patient regarding professional services delivered by a physician.  Rather, Ms. Valletta alleges that she was a professional herself.  ProAssurance asks the Court to focus on the definition of "professional services," which are

9

limited to the "provision of direct patient care." Policy at 5. Its contention founders on the Policy's definition of "professional incident," which is what the Policy actually insures. A "professional incident" is not limited to injuries to a patient, nor is it limited to medical injuries specifically caused by the delivery of "professional services." Id. Rather, the Policy defines a covered "professional incident" broadly as an "act . . . during a continuing course of professional services, arising out of the rendering of, or failure to render professional services to any one person by an insured . . . which results, or is likely to result, in damages." Id. (emphasis omitted).

The Rhode Island Supreme Court has broadly interpreted a virtually identical key phrase – "arising out of the rendering of, or failure to render professional services" – as encompassing not just claims based on medical negligence in the delivery of professional services, but also claims based on any tort committed in the course of rendering professional services. Mellow, 567 A.2d at 368 (holding that policy covered insured for defamation arising from release of blood alcohol readings taken by physician rendering professional services). Similarly, in Porto, 811 A.2d at 1193-95, the Rhode Island Supreme Court interpreted "arising out of" in the context of an exclusion in a homeowner's policy; it accepted the insurer's argument that the ban on coverage for bodily injuries "arising out of" sexual molestation must be interpreted as excluding coverage for negligence claims flowing from the insured's conduct in failing properly to supervise the sexual predator and in failing properly to educate the child regarding how to avoid the advances of the sexual predator. Id. ("The phrase 'arising out of' within policy language is generally considered to mean 'flowing from' or 'having its origin in,' thereby '*indicating that there only need be 'a' causal connection, rather than a proximate causal connection.*'") (quoting 7 Couch on Insurance 3d § 101:54 at 101-147-48 (1997)) (emphasis in Porto). Mellow and Porto

10

are strongly supportive of Dr. McCullough's argument that "arising out of the rendering of" professional services means that the Policy unambiguously covers the incident, which undisputedly arose out of his rendering of professional services to the intoxicated patient.

While no cases in Rhode Island or Virginia have grappled with facts squarely analogous to what are presented here, cases decided elsewhere are instructive; they provide further support for the proposition that the Valletta Complaint is covered by the Policy. Most analogous is Records v. Aetna Life & Cas. Ins., 683 A.2d 834 (N.J. Super. Ct. App. Div. 1996), where the New Jersey court faced a policy with very similar language to what is in issue here, in that it covered any injury "arising out of the rendering of . . . professional services." Id. at 836. The court found that the policy language clearly covered not just claims for the direct rendering of professional services, but also any claim arising out of such rendering; accordingly, it held that the policy covered the personal injury claim of a nurse who alleged that the physician disagreed with her treatment decision and pushed and slapped her (causing a herniated disc among other injuries) in the course of rendering patient care. Id. at 835-37. In an analysis that echoes the Rhode Island Supreme Court's Porto decision, Records provides that "[t]he phrase 'arising out of' must be interpreted in a broad and comprehensive sense to mean 'originating from' or 'growing out of.'" Id. at 837-38. To confirm that such language in a medical malpractice policy extends coverage to claims brought by parties "other than individual patients," the Records court surveyed decisional law from an array of other jurisdictions, including the Rhode Island Supreme Court's decision in Mellow, 567 A.2d at 368.

To counter the force of this analysis, ProAssurance directs the Court to two cases: Med. Mut. Ins. Co. of Maine v. Burka, 899 F.3d 61 (1st Cir. 2018), and Hayne v. The Doctors Co., 145 So.3d 1175 (Miss. 2014). Neither advances the ball for its position because both interpret

11

policies that unambiguously limit coverage to injuries sustained by a patient of the insured physician.

In Burka, 899 F.3d at 62, the First Circuit considered a policy construed by the district court under the law of Maine regarding coverage for a claim against a physician who improperly accessed his former wife's medical records to use against her in their divorce. Referencing the policy's reliance on a doctor-patient relationship as an essential component of the confidentiality obligation and noting that the wife was not the physician's patient, the First Circuit affirmed the interpretation that the applicable policy provision[5] unambiguously provides coverage for a confidentiality breach committed in the course of providing professional services to the particular patient whose medical records are at issue. Id. at 66-70 ("The question is not whether [the former wife] was a patient of any doctor at SMHC, but whether [the physician's] alleged mishandling of records stemmed from his own provision of healthcare services to her.") (emphasis in original). The ProAssurance Policy includes no analogous language limiting coverage to the claims of breach of the duty owed "to that PATIENT."

Similarly, Hayne, 145 So.3d at 1181-84, also involved a policy found to be unambiguous in plainly providing coverage only for injuries "to a patient." Because the claim arose from the doctor's testimony as a pathologist against the plaintiff, who was a criminal defendant, the court noted that "[w]e are constrained to agree with [the insurer's] position that [the claimant] cannot, by any stretch of the imagination, be considered [the physician's] patient." Id. at 1182. The Mississippi Supreme Court affirmed the grant of summary judgment in favor of the insurer. Id. at 1184. The ProAssurance Policy includes no analogous limitation of covered claims to those brought by patients.

---

[5] Coverage for breach of the physician's "obligation to maintain PATIENT confidentiality in the handling of PATIENT records in the direct course of providing PROFESSIONAL SERVICES to that PATIENT." Id. at 68.

12

I find Records to be persuasive. Based on the plain meaning of "arising out of the rendering of . . . professional services," Records, 683 A.2d at 836, together with the absence of words limiting coverage to the claims of patients, I conclude that the Policy was not intended to be limited to suits by patients or suits narrowly based on the rendering of professional services. See Porto, 811 A.2d at 1193-96; Mellow, 567 A.2d at 368. Accordingly, I recommend that the Court declare that the Policy covers the claims asserted in the Valletta Complaint, the filing of which triggered ProAssurance's duty to defend and, potentially, to indemnify.

### B. Workers' Compensation Exclusion

The words used in the workers' compensation exclusion (Exclusion G) are not ambiguous. They clearly provide that the Policy excludes from both the duty to defend and the duty to indemnify "[a]ny obligation for which . . . any carrier as insurer may be held liable under any workers' compensation . . . law." Policy at 6 (emphasis omitted). In this instance, the Valletta Complaint alleges that Ms. Valletta's injuries occurred in the course of her work as an employee of RWMC; it is also undisputed that the workers' compensation carrier as insurer for RWMC, Ms. Valletta's employer, was in fact liable under Rhode Island's workers' compensation law in connection with her personal injury "arising out of and in the course of . . . her employment." R.I. Gen. Laws § 28-33-1.

Under Rhode Island law, the obligations for which such a carrier may be liable include, *inter alia*, the following: "any reasonable medical . . . treatment . . . for such period as is necessary, in order to cure, rehabilitate or relieve the employee from the effects of his injury," R.I. Gen. Laws § 28-33-5; a specific weekly compensation for the period while the incapacity for work is total or partial, R.I. Gen. Laws §§ 28-33-17(a), 28-33-18, 28-33-18.3; payment for permanent total and partial disability, R.I. Gen. Laws § 28-33-17(b, f); and payments for

dependents, R.I. Gen. Laws § 28-33-17(c). Several of these workers' compensation obligations squarely overlap with categories of damages claimed in the Valletta Complaint: for example, she seeks recovery of "medical expenses," "lost wages," and "lost earning capacity." Valletta Compl. ¶¶ 8, 12, 19. Others do not overlap; that is, she claims damages based on "pain and suffering" and "loss of enjoyment of life," and a workers' compensation insurer is liable for neither of those types of damages.

Reading the words of the Policy, I find that ProAssurance excluded from the scope of coverage any of Ms. Valletta's damages that could be obligations of her employer's workers' compensation insurer. That is, whether or not the workers' compensation carrier actually paid such an element of damages, for any damages as to which it has such an obligation under Rhode Island workers' compensation law, ProAssurance is not obliged to defend Dr. McCullough against Ms. Valletta's suit to recover such damages, nor is it obliged to indemnify Dr. McCullough by reimbursing him (or RWMC's insurer on a claim for subrogation) for such damages.

Dr. McCullough argues against the force of the Policy's workers' compensation exclusion by focusing on a portion of the exclusion that is not in issue – the language excluding coverage when the insured himself owes an obligation to the claimant under workers' compensation law.[6] He contends that Exclusion G does not apply because he was not Ms. Valletta's employer and the workers' compensation carrier who may have been liable for her workers' compensation claim was not ProAssurance. He ignores the clarity of the next phrase, connected by a disjunctive "or," which plainly expands the exclusion to cover damages for

---

[6] This provision states that there is an exclusion for "[a]ny obligation for which an **insured** . . . may be held liable under any workers' compensation . . . law." Policy at 6 (emphasis in original). It is related to another exclusion: "F. Injury to any employee of an **insured** unless arising from the treatment to the employee as a patient of such **insured**." Id.

which "any [workers' compensation] carrier as insurer may be held liable." Policy at 6 (emphasis supplied). This phrase broadly references "any carrier"; it does not limit the scope of the exclusion to a carrier providing workers' compensation coverage for Dr. McCullough as employer. To the contrary, Exclusion G unambiguously excludes coverage for obligations for which any insurer may be liable under the workers' compensation laws that are incurred in the common situation where the physician is interacting with the employees of a hospital but is not him/herself the employer. This understanding of Exclusion G accords with the wide breadth of Policy coverage established by the definition of professional incident analyzed above. See TravCo, 736 S.E.2d at 552 ("Each phrase and clause of an insurance contract should be considered and construed together.").

Ms. Valletta's argument is equally inapt.[7] Citing Sousa v. Town of Coventry, 774 A.2d 812, 815 (R.I. 2001), she contends that she is not bound by the policy exclusions because she was not a party to the insurance contract. However, Sousa supports the opposite conclusion – it dealt with a lease agreement between a town and a telecommunications company for the construction of a tower and includes the contingent holding that "there is no support for the proposition that . . . an individual who is not a party to a contract may assert the rights of one of the contracting parties in order to void a contract or have it declared unenforceable." Id. at 815 n.4. That is, if the ProAssurance Policy unambiguously fails to cover certain elements of Ms. Valletta's alleged damages, Sousa presents no basis in law for the Court to expand non-existent

---

[7] At the hearing, Ms. Valletta also argued that Exclusion G must be interpreted as if it were included in the Policy for the exclusive purpose of preventing an insured like Dr. McCullough from trying to use the ProAssurance Policy as a workers' compensation policy. The problem with this argument is that the words used in Exclusion G do not admit of such a narrow interpretation – they clearly reference the liability not just of some other insurer of Dr. McCullough, but of "any carrier as insurer." Even when strictly interpreted as required by Jackson, these words cannot be tortured into meaning anything different from "any carrier as insurer." 159 A.3d at 617 ("[W]hen interpreting the provisions of an insurance policy, we look within the 'four corners of [the] policy, viewing it in its entirety, [and] affording its terms their plain, ordinary and usual meaning.'").

15

contractual rights. Relatedly, Ms. Valletta complains of ProAssurance's delay in bringing the declaratory judgment action. However, she fails to explain how such a delay affects the Court's interpretation of the plain language of the Policy.[8]

I recommend that the Court declare that Exclusion G voids any duty on the part of ProAssurance to defend or potentially to indemnify Dr. McCullough, whether directly or by a claim for subrogation, for any obligation to Ms. Valletta for which RWMC's workers' compensation carrier as insurer was or may have been liable pursuant to Rhode Island workers' compensation laws, including without limitation claims for medical expenses, lost wages and loss of earning capacity.

## V. CONCLUSION

Fairly read, I find that the Policy means that ProAssurance broadly covered all claims arising from Dr. McCullough's rendering of professional services, including those asserted in the Valletta Complaint, but excluded coverage for elements of damages that are the obligation of a workers' compensation insurer, thereby protecting itself from defending and reimbursing Dr. McCullough for such damages, as well as from paying based on a subrogation claim asserted by RWMC's workers' compensation insurer. Accordingly, I recommend that the Court grant in part and deny in part ProAssurance's motion for summary judgment (ECF No. 11) and grant in part and deny in part Dr. McCullough's motion for summary judgment (ECF No. 15). If the Court adopts this recommendation, all claims asserted in ProAssurance's complaint will be determined and final judgment may enter, terminating the action.

---

[8] The Court notes that, in affording Dr. McCullough a defense, ProAssurance's conduct is consistent with preferred practices for insurance companies, which provide that "in situations in which a complaint *even may allege facts* that fall under the insurance policy, insurance companies will often defend their insureds under a reservation of rights while simultaneously or subsequently seeking a court's declaration that no duty to defend actually exists." Ciccone, 900 F. Supp. 2d at 263 (emphasis in original).

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party.  See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision.  See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
September 12, 2019